1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    CHRISTOPHER DALE STAFFIN,              No.  2:19-CV-1058-KJM-DMC

12                    Plaintiff,

13            v.                             ORDER

14    TOM BOSENKO, et al.,

15                    Defendants.

16

17            Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

18    court is Plaintiff's first amended complaint, ECF No. 7.

19            The court is required to screen complaints brought by litigants who have been

20    granted leave to proceed in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  Under this screening

21    provision, the court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious;

22    (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a

23    defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(A), (B).  Moreover,

24    pursuant to Federal Rule of Civil Procedure 12(h)(3), this court must dismiss an action if the court

25    determines that it lacks subject matter jurisdiction.  Because plaintiff has been granted leave to

26    proceed in forma pauperis, the court will screen the complaint pursuant to § 1915(e)(2).  Pursuant

27    to Rule 12(h)(3), the court will also consider as a threshold matter whether it has subject-matter

28    jurisdiction.

                                            1

# I. PLAINTIFF'S ALLEGATIONS

Plaintiff named the following as defendants in the original complaint: (1) Tom Bosenko, the Sheriff of Shasta County; (2) Roger Moore, the Chief of Police for the City of Redding; (3) Jim Milestone, the former Superintendent of the Whiskeytown National Recreation Area; (4) the Shasta Inter-Agency Narcotics Task Force; (5) Leonard Moty, a member of the Shasta County Board of Supervisors; (6) Lester Baugh, a member of the Shasta County Board of Supervisors; (7) the California Highway Patrol; and (8) the United States Drug Enforcement Administration.  See ECF No. 1.  Plaintiff continues to name the following as defendants in the first amended complaint: (1) Tom Bosenko; (2) Roger Moore; (3) James Milestone; (4) the Shasta Inter-Agency Narcotics Task Force; (5) Lenoard Moty; (6) Lester Baugh; and (7) the United States Drug Enforcement Administration.  See ECF No. 7.  Newly named in the first amended complaint are the following additional defendants: (1) Shasta County; (2) the Shasta County District Attorney's Office; (3) the Shasta County Sheriff's Office; (4) Shasta County Code Enforcement; (5) the City of Redding; (6) the Redding Police Department; and (7) the National Park Service.  See id.  Plaintiff no longer names the California Highway Patrol as a defendant.  See id.

Plaintiff now claims:

1.   Plaintiff was a "merchant" running the Medicine Man Dispensary beginning in 2009 and, from 2010 through 2012 was sole proprietor of the Medicine Man Collective.  See id. at 2.

2.   According to plaintiff, rather than pay for a business permit in 2009, which he says would have cost him $3,600.00 "upfront," plaintiff ". . .chose to receive up to three citations in a year which then entails a misdemeanor and take the matter to jury trial and allow the people to decide."  Id.

3.   Plaintiff states that he was issued "no more than" two citations "in a year" and that unpaid fines and attorney's fees cost him $14,000.00.  Id. at 3.

4.   In early spring of 2011, Shasta County Sheriff's deputies executed a warrant at the Medicine Man Collective to search for unpermitted interior build-outs and modifications to the premises.  According to plaintiff, the warrant was invalid because it was for a different address.  See id.

/ / /

2

5.  Plaintiff claims sheriff's deputies "continued to park on, two and up to three vehicles in and around the facility to harass myself and patrons." In mid-2011, plaintiff was evicted from his place of business and plaintiff "closed Medicine Man and proceeded to engage a legal medical 24 plant cooperative grow in McArthur, California." Id.

6.  Next, plaintiff claims he first "engaged" with defendant Bosenko, the Shasta County Sheriff, at a park in the town of Fall River Mills in Shasta County, when Bosenko "was standing in the middle of the road facing me glaring with his hand on his service weapon standing in an aggressive posture." Id. at 4.

7.  According to plaintiff, "the property" – presumably referring to the location of plaintiff's 24-plant grow operation in McArthur – was raided by Shasta County Sheriff's deputies "soon thereafter." Plaintiff was not present during this "raid," which resulted in the confiscation of firearms from the property owner.

8.  Plaintiff states that, later that night, he drove to McArthur to "recover cannabis product" and was subsequently pulled over in Burney, California, and held at gunpoint, arrested, and interrogated for several hours. Plaintiff further states that 33 pounds of cannabis was seized and destroyed. Id.

9.  Next, plaintiff states he encountered defendant Bosenko again at a meeting of the Shasta County Board of Supervisors and that a medical cannabis activist, Rodney Jones, handed Bosenko a copy of a lawsuit. Plaintiff states Bosenko read through the first two pages and then "bolted out the front doors of the building in a huff." Id. at 5.

10. Ten minutes later, Bosenko returned to the meeting room with numerous deputies who proceeded to line themselves at intervals along three walls of the Board Chambers." According to plaintiff, defendant Bosenko "spent his entire morning glaring at me the same as he did on the road to the park in Fall River Mills earlier. . . ." Id.

11. Plaintiff next alleges improper wireless surveillance by Bosenko. According to plaintiff, he possesses evidence indicating that his computer and cell phone were both hacked and accessed, apparently by the Shasta Inter-Agency Narcotics Task Force. See id. at 6.

12. Plaintiff alleges that, two years prior, he encountered defendant Bosenko at a Chevron station on Eureka Way in Redding, California, and noticed Bosenko putting fuel in a "low profile unmarked white Dodge Charger. . . ." According to plaintiff, when Bosenko first saw him Bosenko "displayed immediate anger in his facial expressions and dropped his hand to his service weapon. . ." and glared at plaintiff while plaintiff walked into the convenience store. Id. at 7.

///

3

13. According to plaintiff, in February 2019 he went to Castle Crags State Park in Castella, California, to monitor weather conditions and map the landscape using Google Earth "for purposes of maximizing my mountain bike adventures. . . ." Id.

14. Plaintiff states that whenever he parks at a given trailhead location for the purpose outlined above, a short time later there is evidence that people had been there, such as gum wrappers and cigarette butts. See id.

15. Plaintiff claims that, one unspecified day when he was descending the mountain he came out of the forest to see defendant Bosenko's "distinctive white Dodge Charger" parked at the park headquarters in Castella. Plaintiff suspected that Bosenko was stalking him. Id. at 8.

16. Next, plaintiff claims that in October 2016 someone working for the Shasta Inter-Agency Narcotics Task Force moved in to plaintiff's neighborhood "two doors up." In September someone named "Brook Lynn" appeared at plaintiff's door stating: "Hey, I'm your new neighbor and my husband is SINTF and he doesn't like your plants," referring to plaintiff's six-plant "legal medical cannabis garden." Plaintiff alleges that he was surveilled in the time period immediately after this. Id. at 8-9.

17. Plaintiff next claims:

> Within a few months a Redding Police Department Detective followed me from my neighborhood into Whiskeytown National Recreation Area in a tan colored suburban before sunrise in early spring of 2016. I parked at the Visitors Center and watched him drive toward Whiskeytown Headquarters in the tan colored older model SUV likely Chevrolet Blazer. He has dark colored short hair, tan leather sports jacket, white shirt and multi colored striped tie. I recognized him from an activist event at Redding City Hall in 2014. I had actually spoken to him at a stop light before he and another detective drove into RPD Headquarters. I prepared my bike and gear, hiked the two point five miles to the Shasta Divide Trail summit, rested and then descended the mountain to Shasta Mine Loop parking lot and then took the road back up the dam and Kennedy Memorial Highway back to my vehicle at the visitors center approximate total duration 75 minutes. The sun had rose and it was a cool morning. Whiskeytown HQ had all their people lined up with their backs facing me near the flagpole when I rode past up the hill. The man in a ranger suit with hat stopped speaking and just stared at me when I went past and it reminded me of the incident earlier when I was followed into the park. From that day on anytime I went into the park, Keswick/Iron Mountain Road, Iron Mountain, Trinity Divide adjacent to the backside of the park at Buckhorn Summit or Mad Mule mountain

4

areas I was followed, watched and traced as described
above prior, during and post mountain biking. . . .

Id. at 9-10.

18. Plaintiff states that from the time periods referenced above to
February 2018 he could not go to Village Cycle in Redding,
California "without Shasta County Code Enforcement vehicles and
personnel, Shasta County Animal Control (Sheriff's Deputies) and
or detectives stalking the location both inside and outside." Id. at
11.

19. Plaintiff states that he was "followed for miles from this location"
by Code Enforcement and "by undercover police. . . ." Id. at 12.

20. According to plaintiff, in late 2014 Shasta County Marshalls were
"triangulating in my vicinity" on several occasions near Pleasant
Drive in West Redding, California. Plaintiff states that, while
speaking with AT&T to change his billing address, "interference
was so bad I couldn't receive their texts with password updates to I
went mobile to the power lines which scramble stingray signals
from my research." Suddenly, texts came through and Plaintiff
told the AT&T agent with whom he was speaking that "it's gotten
so bad around here with cannabis activism I expect the Marshall's
to drive by any second." According to Plaintiff, within 30 seconds
a Marshall's vehicle passed from the north heading south. See id.

21. Plaintiff states that he "identified all the 'normal user' signals in
the immediate vicinity" of his home. He states there are times
when "other" signals appear. Plaintiff states he "went mobile"
with a laptop as a "wifi monitor exclusively." Plaintiff states that
this is when he discovered "signals" with names like "Hidden
Network," "Hidden Network Open Link," "and SUPER PIG Open
Link." Id. at 13.

22. Plaintiff claims these same networks would appear, disappear, and
reappear as he traveled around the valley in as much as a 30-mile
radius. According to Plaintiff, the same wifi signals are apparent
at the Shasta County Sheriff's Office at 300 Park Marina Circle in
Redding, California. See id.

23. Plaintiff states that "Hidden Network" and others were following
him between Buenaventura Ave. and Mt. Gate via South
Bonnyview Blvd. and I-5 in Redding, California. See id.

24. Plaintiff states that he has "clearly and unequivocally identified"
"Hidden Network" as being used by Sheriff's Department
personnel and the "MIT" – Marijuana Investigation Team – the
"MET" – Marijuana Eradication Team – and/or "SINTF" – the
Shasta Interagency Narcotics Task Force. Id. at 14.

25. Plaintiff next outlines what he calls "frenetic" activity by the
United States DEA in Northern California and Southern Oregon in
2017 and 2018. According to Plaintiff, he was being tracked by
government vehicles. See id.

5

1    Plaintiff alleges Defendant Bosenko is liable for the conduct of the officers under

2    his command.  See id. at 16.  Plaintiff further alleges violations of his constitutional rights under

3    the First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Ninth

4    Amendment, and Fourteenth Amendment pursuant to a policy or custom implemented and

5    followed by unspecified defendants.  See id. at 17-18.  Plaintiff states that the policy or custom

6    "is reflected in the proposed initiative for 2014, Measure A."  Id. at 16.

7

8                                    **II.  DISCUSSION**

9    In considering whether a complaint states a claim, the Court must accept all

10   allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94

11   (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.

12   See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp.

13   Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per

14   curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v.

15   McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by

16   actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

17   (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

18   lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

19   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

20   of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

21   notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

22   550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

23   to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic

24   recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

25   raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain

26   "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has

27   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

28   reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at

1  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

2  than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S.

3  at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

4  it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id.

5  (quoting Twombly, 550 U.S. at 557).

6          Having carefully considered Plaintiff's lengthy and detailed statement of facts, the

7  Court finds the first amended complaint fails to satisfy the plausibility standard.  Plaintiff simply

8  has not explained how the sequence of events he outlines in the first amended complaint suggests

9  any violation of his constitutional or statutory rights.  Plaintiff's allegations are not even "merely

10  consistent" with liability as no theories of liability are set forth.

11          The Court further finds Plaintiff's first amended complaint is deficient for the

12  same reasons outlined in the Court's prior screening order addressing the original complaint,

13  reasons the Court will not repeat here.  Plaintiff's first amended complaint continues to suffer

14  from the same defects.  Prior to recommending dismissal of the entire action, however, and in the

15  interest of justice, the Court will provide Plaintiff with one final opportunity to amend to allege

16  facts which show how each of the named defendants is liable.

17

18                              **III.  CONCLUSION**

19          Because it is possible that the deficiencies identified in this order may be cured by

20  amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire

21  action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is

22  informed that, as a general rule, an amended complaint supersedes the original complaint.  See

23  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to

24  amend, all claims alleged in the original complaint which are not alleged in the amended

25  complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if

26  Plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make

27  Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be

28  complete in itself without reference to any prior pleading.  See id.

1           If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

2    conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

3    Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

4    each named defendant is involved, and must set forth some affirmative link or connection

5    between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

6    164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7           Finally, Plaintiff is warned that failure to file an amended complaint within the

8    time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

9    1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply

10   with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b).

11   See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

12          Accordingly, IT IS HEREBY ORDERED that:

13       1.    Plaintiff's first amended complaint is dismissed with leave to amend; and

14       2.    Plaintiff shall file a second amended complaint within 30 days of the date

15   of service of this order.

16

17   Dated:  August 9, 2021

18                                       DENNIS M. COTA

19                                       UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28